IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

IRIS WEEKLEY, as Personal
Representative of the Estate of Jeffery
Weekly and on behalf of KATIE
WEEKLEY, as survivor,

    Plaintiff,

vs.                                          CASE NO.: 5:12-CV-170-MW-CJK

HON. MICHAEL ADKINSON in his
capacity as Sheriff of Walton County;
and, NICK EMBRY, in his individual
capacity,

    Defendants.
_____/

## DEFENDANTS' FIRST MOTION IN LIMINE - DAUBERT

COME NOW, Defendants, MICHAEL ADKINSON, in his official capacity as Sheriff of Walton County, Florida; and, NICK EMBRY, in his individual capacity, by and through undersigned counsel, pursuant to the applicable Federal Rules of Civil Procedure and Federal Rule of Evidence 702, and move for a ruling in limine to restrict the Plaintiff, IRIS WEEKLEY, as Personal Representative, and on behalf of KATIE WEEKLEY, survivor, their counsel, and their designated expert witnesses, Dr. Cyril Wecht, M.D., and David E. Balash from the following:

    1.    Any speculative or conclusory testimony regarding the variance in the angles of the two bullets fired by Deputy EMBRY; and, any speculative testimony concerning the alleged delay between firing of each of the two bullets premised upon such alleged variance in angles between the two bullets. See, <u>McDowell v. Brown</u>, 392

F. 3d 1283 (11th Cir. 2004).

2. On December 17, 2012, Dr. Cyril H. Wecht issued a written report containing his opinions. See, Exhibit J-2.[1] In reaching his opinions concerning angles/trajectories of the bullets, Dr. Wecht primarily relied upon the Autopsy Protocol which was signed by Dr. Andrea Minyard on September 29, 2009. See, Exhibit I; see also, Exh. J, Wecht deposition, pp. 30-31, ll. 24-25, 1-2.

3. Dr. Minyard's autopsy noted two gunshot wounds to the chest. See, Exh. I, signature page; see also, Exh. I, pp. 2-3. Wound 1 was at 55 ½" above the heel, centered in the anterior midline (directly over the sternum). The projectile was recovered from Weekley's ninth thoracic vertebra. Id. "The hemorrhagic wound track sequentially perforates the [center of the] sternum at the level of the third anterior rib, the atria of the heart, the aorta and the esophagus." The autopsy report is not specific as to the downward angle. "The wound track travels from the decedent's front to back and downwards." Id. at p. 3. The second gunshot wound to Mr. Weekley's chest entered approximately 1 ½" higher than the first wound, and approximately 1/4" to the left Weekley's anterior midline (center of his sternum). Id. at p. 3. The path of Wound 2 was: "The hemorrhagic wound track sequentially perforates the sternum at the level of the first anterior rib, the aorta, the left lateral aspects of the eighth and ninth thoracic vertebra, and the lower lobe of the left lung." The autopsy report shows "The

---

[1] To avoid duplication of documents and confusion, the exhibits referred to herein shall be those filed in support of Defendants' Motions for Summary Judgment. See, Doc. 65 (Exhibits filed in support of Defendants' Motions for Summary Judgment and First Motion in Limine - Daubert).

wound track travels from the decedent's right to left and downwards." There are no exact angles shown in the autopsy report for the trajectories of the two bullets; either vertically or horizontally. Both of the wounds were very close together (within 1 ½" or so) at the entrance points, and <u>both of them either touched upon or ended at the ninth thoracic vertebra</u>. See, <u>Id</u>.

    4.    Dr. Wecht opined in his first opinion:

> 1.    Mr. Weekley died as a result of two gunshot wounds which produced extensive damage to the heart, aorta, left lung, esophagus and several bony structures.
>
> The trajectories of these two wounds were from front to back and downward. The downward angle would have been approximately 45 degrees and most likely even greater.

Exh. J-2, Wecht depo. (Exh. 2 to Wecht Depo.). With regard to this first opinion, Dr. Wecht has conceded that <u>either</u> of the two gunshot wounds would have been fatal. Exh. J, Wecht Depo., at pp. 19-20, ll. 8-25, 1-17. Even with those two gunshot wounds, however, Weekley would have been able to straighten up or stand up from a bent to a standing position. <u>Id</u>., at p. 21, ll. 20-22.

    5.    In order to achieve the downward trajectories noted in the autopsy, "a person has to be bent over to allow for that kind of angularity to occur." Exh. J, at p. 32, ll. 14-16. "He could not have been standing upright." <u>Id</u>., at p. 33, ll. 7-8. Such opinion testimony concerning the downward track of the bullets is entirely consistent, however, with Deputy Embry's account that Weekley had "bowed up" at him and appeared to be in a football-like stance as if he was preparing to "lunge and make a

3

tackle." Exh. D, Embry's Affidavit, ¶14; see also, Exh. V, Deputy EMBRY'S 10-23-12 video depo. Dr. Wecht did not do any examination or measurements of the body itself nor of the trajectories. He had to rely totally upon the information contained in the autopsy report as well as the photographs and other materials he reviewed. See, Exhibit J, Wecht Depo., p. 31.

6. Dr. Wecht has opined that the lateral deviation between the two wounds was somewhere between 5 to 15 to 20 degrees (right to left). Exh. J, Wecht Depo., p. 44-45, ll. 19-25; 1-25. But, Dr. Wecht admits he cannot be sure of the actual deviation based on the information available to him. Id., at p. 46, ll. 1-7.

7. Such expert opinion as to the lateral variance (left to right) in angles between the two bullets is conclusory, speculative and not reliable. It disregards the autopsy's finding that both bullets touched the 9th thoracic vertebrae, with one of them ending in the adjacent left lung. How any expert can conclude such a difference in angles is "a significant difference" is problematic to say the least. Because federal courts must sit as gatekeepers before allowing such expert testimony, see, McDowell, 392 F.3d at 1295, this Court should exclude such testimony and opinions from either a jury; or, in determining whether summary judgment is warranted. See, McDowell, at pp. 1301-1302 (trial court properly denied expert causation testimony); Daubert v. Merrell Dowell Pharmaceuticals, Inc., 509 U.S. 579, 591, 113 S.Ct. 2786 (1993).

8. Dr. Wecht cites no scientific data or research for his opinion, nor does he indicate any scientific or laboratory justification for concluding that "the shots were most likely not fired within milliseconds of each other. A second or more would have

4

been required to have allowed for such a significant movement of the victim that could account for the "significant differences" in the trajectories." Exh. J, p. 30, ll. 3-9. Such opinion regarding a significant difference in the trajectories of the bullets and the delay between firing of shots has no factual support in the record. It is a purely speculative and conclusory inference based upon facts that are not in the record. Dr. Wecht's opinion is classic example of an expert offering a "because I said so" opinion which should be excluded as unreliable under Daubert. McDowell, at 1298 ("A 'supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based on some recognized scientific method.'"); Clark v. Takata Corp., 192 F.3d 750, 759, n. 5 (7th Cir. 1999). Thus, Wecht's opinions on the alleged differences in the angles of the two bullets are unreliable, and not based on the actual autopsy results, and should not be admitted for any purpose.

### David E. Balash

Similarly, the opinion of Plaintiff's proposed forensics and firearms expert, David E. Balash, that "these two bullet strikes are very close together <u>and dramatically different in angle</u> in the opinion of the undersigned" is equally lacking in factual foundation. See, Exh. W, Expert Opinion of David E. Balash, dated November 1, 2012. To the extent Mr. Balash claims there is a "dramatic difference" in the angle between the two bullets, his opinion should be excluded as lacking any factual foundation and inconsistent with the actual autopsy report itself. See, Exh. X, Excerpts of 12-18-12 Deposition of David E. Balash, pp. 87-88, ll. 22-25, 1-22 ("If Mr. Weekley were bent forward at the waist almost parallel to the ground and able to spin possibly like a

5

ballet dancer that quickly, you might be able to get the two different angles in a fairly fast moving person such as that."). Mr. Balash's opinion simply does not meet the test for a fact-based reliable expert opinion under federal law and should be excluded.

## MEMORANDUM OF LAW

A District Court's ruling on admissibility of expert testimony is reviewed for abuse of discretion. General Electric Company v. Joiner, 522 U.S. 136, 138-39, 118 S.Ct. 512 (1997); McDowell, 392 F.3d at 1294. Federal courts apply Federal Rules of Evidence in determining whether to admit expert testimony, even in state-law-based claims. Id. at 1294-95. "Often, as is the case here, the ruling may be 'outcome determinative' but we do not apply a stricter standard even though the ruling results in a summary judgment." Id. After dismissing all federal claims, the only claims remaining in McDowell were state medical malpractice claims. Because Plaintiff's experts' opinions in McDowell were conclusory and unreliable under Daubert, they were excluded and the district court's summary judgment on the state law claims was affirmed. McDowell, 392 F.3d at 1302. The same thing should happen here.

"A district court is thus required to act as a gatekeeper 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the practice of an expert in the relevant field.'" McDowell, 392 F. 3d at 1299; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152, 119 S.Ct. 1167 (1999). "'[S]omething doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method' be deemed conclusive.'" Id. "It is elementary that the

conclusion or opinion of an expert witness based on facts or inferences not supported by the evidence in a cause has no evidential value. It is equally well settled that the basis for a conclusion cannot be deduced or inferred from the conclusion itself. The opinion of the expert cannot constitute proof of the existence of the facts necessary to the support of the opinion." Mount Sinai Medical Center of Greater Miami, Inc. v. Gonzalez, 98 So.3d 1198, 1202 (Fla. 3rd DCA 2012), *citation omitted*.

Here, Dr. Wecht's and Mr. Balash's opinions regarding variation in angles and a delay between firing of the two shots violates Rule 702, Fed.R.Evid. (Testimony must be based on sufficient facts or data).

Dr. Wecht's opinions do not meet the reliability test set forth in McDowell and Daubert. His opinions are neither grounded upon scientific principles, nor are they based upon "knowledge" as set forth in Daubert and its progeny. McDowell, at 1298 (Testimony "must constitute 'knowledge,' meaning something more than subjective belief or unsupported assumptions."). Stated another way, this is a case where there is too great an analytical leap between the actual facts and the resulting expert's opinion. Id. at 1298-99. In other words, if this Court meticulously focuses on the expert's principles and methodology, and not the conclusions that were generated, Dr. Wecht's and Mr. Balash's opinions should be excluded as unreliable. Id. at 1298-99.

Defendants concede that Dr. Wecht is competent to render a medical opinion, and that Mr. Balash is competent to render certain firearms-related opinions. But, as Balash himself concedes, his testimony has previously been excluded concerning what organs a bullet went through. See, Exh. X, p. 14, ll. 11-14. "It would be same as telling

7

me not to explain how the Empire State Building was built. I have no qualifications in that area and was never intending to do it." Id., at 11, 15-19. He then turns around and uses the location of internal body organs to create an opinion regarding the dramatic variance in angles of the two bullets. But, such opinions must be both competent and reliable. McDowell, at 1297 (emphasis added).

Here, WEEKLEY must prove that Sheriff ADKINSON'S agent's actions not only caused the death of Jeffrey Weekly, but, as McDowell makes clear:

> [Such] scientific evidence must 'fit' the plaintiff's theory of causation. In this case, none of the doctor's theories 'fit' as evidence relevant to the cause of plaintiff's injuries.
>
> . . . .
>
> We agree with the district court that the testimony 'essentially boils down to an opinion that earlier surgical intervention would be preferable.' The experts then made the leap from this 'presumably accepted scientific principle . . . to an unsupported scientific principle . . . that a delay of more than [1] hour caused Plaintiff's injury.' This 'leap of faith' was supported by little more than the fact that early treatment begets improved recovery. The experts, however, provided no existing research detailing the extent of injury or recovery at different time intervals.

Here, the Court should do the same thing the District Court did in McDowell. It should exclude conclusory and speculative expert testimony regarding the alleged delay between the gunshots; and, the alleged significant variation between the angles of the two projectiles. Such variance in angles was the purported basis for Dr. Wecht's conclusory opinion that there was, in fact, a delay of a "second or more" between the two shots being fired. The actual facts shown in Dr. Minyard's autopsy report, however, are completely at odds with this conclusory theory.

8

It is inconceivable that there could be a "significant variation" in the bullet angles given the close distance between the entry points of the two bullets, the very close alignment of the two projectile paths (both passing through sternum, aorta, striking or lodging in the 9th thoracic vertebra, and both bullets being recovered from final resting points which are physically very close to each other).

CERTIFICATION OF COUNSEL

Undersigned counsel has conferred with James Cook, counsel for Plaintiff, regarding Defendants' Motion in Limine and Mr. Cook opposes same.

WHEREFORE, for the foregoing reasons stated, the opinions of Dr. Wecht and Mr. Balash: that there was a dramatic variance or difference between the angles of the two bullets; and, because of such alleged difference in angles, therefore, there had to be a significant lapse between the firing of the two bullets are unreliable and should not be admitted for any purpose.

Respectfully submitted this 9th day of April, 2013.

/s/ Carl R. Peterson, Jr.
CARL R. PETERSON, JR.
Florida Bar No. 980048
JOLLY & PETERSON, P.A.
Post Office Box 37400
Tallahassee, Florida 32315
850-422-0282

*Attorneys for Defendants Adkinson & Embry*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by CM/ECF only to James Cook, Esq., 314 West Jefferson Street, Tallahassee, Florida 32301 and W. David Bennett, Esq., Ellis, Ged & Bodden, P.A., 7171 North Federal Hwy., Boca Raton, Florida 33487 this 9th day of April, 2013.

/s/ *Carl R. Peterson, Jr.*
CARL R. PETERSON, JR.

cc: Walton County Sheriff's Office, Attn: Henry Alford
Florida Sheriff's Risk Management Fund, Attn: Shelly Marks, Esq.