IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

IRIS WEEKLEY, as Personal Representative of
the Estate of Jeffery Weekly and on behalf of
KATIE WEEKLEY, as survivor,

      Plaintiff,

vs.                                     CASE NO.: 5:12-CV-170-MW-CJK

HON. MICHAEL ADKINSON in his capacity
as Sheriff of Walton County; and, NICK
EMBRY, in his individual capacity,

      Defendants.
_____/

## DEFENDANTS' SECOND MOTION IN LIMINE - DAUBERT

COME NOW, Defendants, MICHAEL ADKINSON, in his official capacity as Sheriff of

Walton County, Florida; and, NICK EMBRY, in his individual capacity, by and through undersigned

counsel, pursuant to the applicable Federal Rules of Civil Procedure and Federal Rule of Evidence

702, and move for a ruling in limine to restrict the Plaintiff, IRIS WEEKLEY, as Personal

Representative, and on behalf of KATIE WEEKLEY, survivor, their counsel, and their designated

expert witnesses, Cyril Wecht, M.D., and David E. Balash from the following:

1.      Any speculative or conclusory "expert" testimony regarding whether Deputy

EMBRY'S account of the encounter between himself and the decedent, Jeffrey Weekley, is credible.

See, McDowell v. Brown, 392 F. 3d 1283 (11th Cir. 2004); United States v. Frazier, 387 F.3d 1244,

1259-63 (11th Cir. 2004); see also, Sonnier v. Field, 2:05-CV-14, 2007 WL 576655, #3-4 (W.D.

Pa. 2007) (excluding testimony of Mr. Balash concerning officer's prior statements because it would

exceed Balash's expertise and would invade the province of the jury); see also, White v. Gerardot,

77 Fed.R.Evid.Serv. 596, Case No. 1:05-CV-382, WL 4238959, *9-10 (N.D. Ind. 2008) (same).

2.    Any irrelevant or conclusory testimony criticizing alleged errors or omissions made by either FDLE or the coroner, Dr. Andrea Minyard, in her autopsy report.  Such post-incident investigation by an independent police agency; and, the related autopsy cannot be attributed to either of the Defendants here.  Admitting such unreliable and conclusory opinions before the jury here would plainly be prejudicial and irrelevant. White, at *6-7; Sonnier, at *4 ("Any errors or omissions by the State Police in their post-incident investigation could not be attributed to the defendants. Accordingly, Balash's opinions  and testimony on this topic will be inadmissible at trial.")

3.    Any unqualified police practices testimony by Mr. Balash concerning the alleged excessive use of force and how Deputy EMBRY should have gone about confronting Mr. Weekley. White, at *7 (granting motion to exclude Balash's testimony "including that (1) the investigation 'appeared to . . . be pre-ordained as to the outcome rather than a search for how the event transpired'"); see also, Id. at *9 (granting exclusion of Balash's testimony because he was not qualified to testify in that area of expertise) citations omitted; see also,  Sonnier, at *4 (limiting Balash's testimony to his area of expertise).

Expert Testimony and Opinions

David E. Balash.  Mr. Balash was not retained or requested to provide an expert opinion concerning the use of force in this case.  Doc. 80-3, Balash Depo., p. 74, ll. 16-19.  He is not offering himself as a use of force expert. Id. at l. 23.  Even so, in his written opinion, Balash stated:

> A law enforcement officer can use lethal force if he or she reasonably
> believes his or her life is threatened.   The operative word is
> reasonable.   Deputy Embry was told by the complainant first that he
> [Weekley] was intoxicated and that he almost always carried a pocket
> knife.  Pocket knives have folding blades and they are carried in the

closed position.

. . . .

Mr. Weekly did not have a knife on his person and the stated threat given by Deputy Embry is not credible in this examiner's opinion.

Doc. 80-2, Balash Opinion, p. 7 of 20.

Balash criticized both FDLE and the medical examiner in his written opinion. Doc. 80-2, p. 4 of 20 ("The investigation into the death of Mr. Weekley appears to the undersigned to have been driven by what the shooting officer, Deputy Embry, told the investigators happened rather than have the available evidence drive the investigation. This examiner cannot find any meaningful reference to blood spatter and blood staining evidence in the multitude of reports generated in this case, . . ."). "There does not appear anywhere this examiner can find a direct measurement between the fired cartridge cases found at the scene near the small tree branch/sapling and the feet of Mr. Weekley. These would [be] and are critical measurements. FDLE would be well served to ascertain these distances from the collected measurements." Id.; see also, Doc. 80-3, p. 65-66 (where Balash concedes that he is critical of FDLE's investigation for not measuring the distances and for not performing the weapons testing that he believes should have been done).

Balash also noted weaknesses in FDLE's photography of the crime scene. Doc. 80-3, Balash Depo., p. 57, ll. 9-13 (The FDLE photos taken "certainly they did not cover that [ground area where Balash thinks Embry was standing] adequately in my opinion, but I was writing that in reference to where Deputy Embry said he was and that is what I was looking for at that location.").

With regard to the medical examiner's autopsy protocol, Balash said:

The Medical Examiner's report lists the correct distance above the heel for both the bullet entrance holes, however, only indicates where in the anatomy of Mr. Weekley the recovered projectiles were located

and this fails to address the report's wording of 'downward' with a specific distance above the heel so one may see how 'downward' the bullet flight path really was. The Medical Examiner also failed to photograph the bullet strike to the spinal column prior to a large section of spine being removed to show the recovered bullet. The undersigned questions why trajectory rods (a normal practice) were not utilized by the medical examiner prior to opening the chest cavity which would have allowed a view of the angles of these two shots.

Doc. 80-2, Balash Opinion, p. 6 of 20; see also doc. 80-3, pp. 70-71 (discussing use of trajectory rods). Balash also questions why Dr. Minyard removed a portion of Weekley's spine prior to photographing where the bullet was lodged in his spine. Id. at p. 71, ll. 13-15.

Cyril Wecht, M.D. - In his deposition, see, Doc. 65-10 (Exh. J in support of Summary Judgment Motions, etc.), Dr. Wecht testified: "In my report, I have expressed some criticisms, if they can be called that. I did not undertake this for the purpose of criticizing Dr. Minyard. She's not a party to the case." Doc. 65-10, pp. 12-13, ll 25, 1-3. "Measurements were not made as to the site of recovery of each of the two slugs, which I believe should have been done, and the spinal cord at the level of the 8th and 9th thoracic vertebrae was not examined to see if it had been traumatized by the bullet wound. I believe that should have been done." Id, at p. 13, ll 6-11.

## MEMORANDUM OF LAW

A District Court's ruling on admissibility of expert testimony is reviewed for abuse of discretion. General Electric Company v. Joiner, 522 U.S. 136, 138-39, 118 S.Ct. 512 (1997); McDowell, 392 F.3d at 1294; Frazier, 367 F.3rd at 1259. Federal courts apply Federal Rules of Evidence in determining whether to admit expert testimony, even in state-law-based claims. McDowell, at 1294-95. "Often, as is the case here, the ruling may be 'outcome determinative' but we do not apply a stricter standard even though the ruling results in a summary judgment." Id. After

dismissing all federal claims, the only claims remaining in <u>McDowell</u> were state medical malpractice claims. Because Plaintiff's experts' opinions in <u>McDowell</u> were conclusory and unreliable under <u>Daubert</u>, they were excluded and the district court's summary judgment on the state law claims was affirmed. <u>McDowell</u>, 392 F.3d at 1302. The same thing should happen here.

"A district court is thus required to act as a gatekeeper 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the practice of an expert in the relevant field.'" <u>McDowell</u>, 392 F. 3d at 1299; <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 152, 119 S.Ct. 1167 (1999). "The importance of <u>Daubert 's</u> gatekeeping requirement cannot be overstated." <u>Frazier</u>, 367 F.3d at 1260. "The district court's role is especially significant since the expert's opinion 'can be both powerful and quite misleading because of the difficulty in evaluating it.'" <u>Id</u>., *quoting,* <u>Daubert</u>. "Indeed, no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case, and based upon otherwise inadmissible hearsay if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" <u>Id</u>.; Fed.R.Evid. 703. "While there is inevitably some overlap among the basic requirements-qualification, reliability, and helpfulness-they remain distinct concepts and the courts must take care not to conflate them." <u>Frazier</u>, 387 F.3d at 1260.

> Of course, the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express. As we observed in <u>Quiet Technology</u>, 'while an expert's overwhelming qualifications may bear on the reliability of his proffered testimony, they are by no means a guarantor of reliability.... [O]ur caselaw plainly establishes that one may be considered an expert but still offer unreliable testimony." Quite simply, under Rule 702, the *reliability* criterion remains a

discrete, independent, and important requirement for admissibility.

Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, "[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" . . . . <u>If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong</u>.

Thus, it remains a basic foundation for admissibility that "[p]roposed [expert] testimony must be supported by appropriate validation- *i.e.*, 'good grounds,' based on what is known." As the Supreme Court put it, 'the Rules of Evidence-especially Rule 702-... assign to the trial judge the task of ensuring that an expert's testimony ... rests on a reliable foundation.'

. . . .

Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403. Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, . . . . Indeed, 'the judge in weighing possible prejudice against probative force under Rule 403 ... exercises more control over experts than over lay witnesses.' Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse the jury . . .

<u>Frazier</u>, 387 F.3d at 1261-63, *citations omitted* (emphasis by underlining added). This Court should not let the celebrity status of Dr. Wecht or his long and distinguished service as a coroner/pathologist conceal the fact this his opinion is resting largely upon his own *ipse dixit*, and not the actual facts of the autopsy. <u>Frazier</u> at 1261.

"'[S]omething doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method' be deemed conclusive.'" <u>Id</u>. "It is elementary that the conclusion or opinion of an expert witness based on facts or inferences not supported by the evidence in a cause has no evidential value. It is equally well settled that the basis for a conclusion cannot be deduced or inferred from the conclusion itself. The opinion of the expert cannot constitute proof of the existence of the facts necessary to the support of the opinion." <u>Mount Sinai Medical Center of Greater Miami, Inc. v. Gonzalez</u>, 98 So.3d 1198, 1202 (Fla. 3rd DCA 2012), *citation omitted*.

Here, both Dr. Wecht's and Mr. Balash's opinions regarding the alleged deficiencies in FDLE's investigation or in the autopsy cannot possibly be attributed to Deputy EMBRY or Sheriff ADKINSON. The Defendants had no control over these processes, and it would be fundamentally unfair and prejudicial under Rule 403 to allow the jury to draw any conclusions based on comments indicating there were weaknesses in either process. Thus, any opinions/testimony or argument arising therefrom should be excluded. <u>White</u> at *6-7; <u>Sonnier</u> at *4.

This Court should do the same thing the District Courts did in <u>Sonnier</u> and <u>White</u>. It should exclude unreliable, conclusory and speculative expert testimony regarding whether the use of force was justified; and, whether *either* the autopsy by Dr. Minyard or the FDLE investigation should have been conducted differently. The facts of the autopsy and investigation are what they are. It also should not allow Mr. Balash to opine concerning matters involving excessive force since he is not qualified to testify in this area and should not be allowed to express opinions outside his areas of expertise (ballistics/firearms and forensics).

<u>CERTIFICATION OF COUNSEL</u>

Undersigned counsel has conferred with James Cook, counsel for Plaintiff, regarding Defendants' Second Motion in Limine and Mr. Cook opposes same.

WHEREFORE, for the foregoing reasons stated, the opinion Mr. Balash: that Deputy EMBRY'S testimony is not credible; that there were deficiencies in the FDLE investigation and autopsy; that Deputy EMBRY'S use of force was unjustified are unreliable, irrelevant and high prejudicial under Rule 403. They should not be admitted for any purpose. Likewise, Dr. Wecht should not be allowed to critique or criticize Dr. Minyard's autopsy because it would be unfair and prejudicial to these Defendants, and the fact that he might have done things differently is irrelevant in the moments leading up to EMBRY's decision to fire his weapon.

Respectfully submitted this 17th day of May, 2013.

*/s/ Carl R. Peterson, Jr.*
CARL R. PETERSON, JR.
Florida Bar No. 980048
JOLLY & PETERSON, P.A.
Post Office Box 37400
Tallahassee, Florida 32315
850-422-0282
*Attorneys for Defendants Adkinson & Embry*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by CM/ECF only to James Cook, Esq., 314 West Jefferson Street, Tallahassee, Florida 32301 and W. David Bennett, Esq., Ellis, Ged & Bodden, P.A., 7171 North Federal Hwy., Boca Raton, Florida 33487 this 17th day of May, 2013.

*/s/ Carl R. Peterson, Jr.*
CARL R. PETERSON, JR.
